# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEXT DAY MARBLE & GRANITE, INC., AND NEXT DAY MARBLE & GRANITE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NAVID VARDI; INDEX FINANCIAL SERVICES, LLC; AND LOMAS FINANCIAL GROUP LLC, <br><br> Defendants. | CASE NO. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Next Day Marble & Granite, Inc. ("Next Day, Inc.") and Next Day Marble & Granite, LLC ("Next Day, LLC"), by and through their undersigned counsel, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., files this civil action against Defendants Navid Vardi, ("Vardi"), Index Financial Services, LLC ("Index"), and Lomas Financial Group LLC ("Lomas") (collectively "Defendants"), and in support of this Complaint, Plaintiffs aver as follows:

### I. INTRODUCTION.

1. This dispute arises out of Next Day, LLC's purchase of a property located at 101 South 17th Street, Harrisburg, Pennsylvania, 17104 ("Property"), which Next Day, Inc. rented to operate its stone countertop supplier business.

2. Plaintiffs bring this action to recover losses incurred because Defendants collectively failed to fulfill their promises to Plaintiffs to secure funding for Next Day, LLC to purchase the Property and ensure timely and efficient closing procedures for the purchase, as Defendants promised they would.

## II.   PARTIES.

3. Next Day Marble & Granite, Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 101 South 17th Street, Harrisburg, Pennsylvania, 17104.

4. Next Day Marble & Granite, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 101 South 17th Street, Harrisburg, Pennsylvania, 17104. Next Day, LLC owns the Property and rents it to Next Day, Inc.

5. Upon information and belief, Index Financial Services, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business at 8386 Old Vicarage Street, Lorton, Virginia 22079.

6. Upon information and belief, Lomas Financial Group LLC is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with a principal place of business at 14780 Soapstone Drive, Gainesville, Virginia, 20155

7. Upon information and belief, Navid Vardi is a resident and citizen of the Commonwealth of Virginia.

8. At all relevant times, Mr. Vardi acted either in his individual capacity or as an employee of Index or Lomas or both.

### III.   JURISDICTION AND VENUE.

9. This Court has subject matter jurisdiction over this matter based on diversity of citizenship, under 28 U.S.C. § 1332 because the dispute involves an amount in controversy that exceeds $75,000, exclusive of interests and costs, and there exists complete diversity between the parties, as no plaintiff is a citizen of the same state as any Defendant.

10. This Court has personal jurisdiction over Defendants because all defendants sought to conduct business in the Commonwealth of Pennsylvania.

11. Venue properly lies in this district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district and the property underlying the dispute is located in Harrisburg, Pennsylvania.

### IV.   FACTUAL BACKGROUND.

**A.   Next Day, the Property, and the Purchase Agreement.**

12. Next Day Marble & Granite, Inc. ("Next Day, Inc.") crafts and supplies stone countertops and other surfaces for residential and construction projects in the greater Harrisburg and Central Pennsylvania area.

13. Since November 2015, Next Day, Inc. has operated its business from the Property, which it leased from RCK Properties, Inc. ("RCK").

14. With Next Day, Inc.'s lease coming to an end, Next Day, Inc. inquired with RCK about purchasing the Property, as Next Day, Inc.'s business growth put it in position to own the building it had used for almost a half a decade to operate its business.

15. From April into July, 2019, RCK and Next Day, Inc. negotiated the terms and conditions for Next Day, Inc. to purchase the Property from RCK.

16. By July 18, 2019, Next Day, Inc. and RCK had achieved an agreement in principle for Next Day, Inc. to purchase the Property.

17. Almost immediately after finalizing the purchase with RCK, Next Day, Inc. began coordinating with Navid Vardi to secure funding for the purchase.

18. To facilitate the sale, Next Day, Inc., created Next Day Marble & Granite, LLC ("Next Day, LLC"), and, by way of assignment, Next Day, LLC stepped into Next Day, Inc.'s shoes in the negotiations with RCK.

19. Mr. Vardi was also notified that Next Day, LLC would be purchasing the Property and that it would need financing to do so, preferably on the same or better terms than what Mr. Vardi promised to Next Day, Inc.

20. On August 8, 2019, Next Day, LLC and RCK executed a written purchase agreement (the "Purchased Agreement") memorializing the parties' agreement for Next Day, LLC, Inc. to buy the Property (the "Purchase").

### B.     Next Day, LLC Turns to Vardi.

21. On August 9, 2019, Next Day, LLC gave Mr. Vardi a copy of the executed Purchase Agreement and asked him to obtain all documentation necessary to meet all Purchase Agreement deadlines:

    a. Thursday, September 5, 2019, thirty days after execution, to perform all due diligence (the "Due Diligence Period");

    b. Friday, September 20, 2019, forty-five days after execution, to secure financing (the "Commitment Period");

    c. Wednesday, October 23, 2019, no later than thirty (30) days from the close of the Commitment Period to hold the closing complete the purchase (the "Closing Deadline").

22. On August 21, 2019, Next Day, LLC again asked Mr. Vardi to let Next Day, LLC know what information and documentation he needed to finalize financing for the Purchase as the Purchase Agreement required.

23. Next Day, LLC also reminded Mr. Vardi about all upcoming deadlines in the Purchase Agreement.

24. Not only did Mr. Vardi fail to respond to Next Day, for five days, but he also refused to take any action because, as he claimed without explanation, he

could not do anything until Next Day, LLC's principals returned from international travel.

25. Next Day, LLC continued to ask Mr. Vardi about documents needed for Closing, but Mr. Vardi refused to act, despite approaching deadlines.

### C. Pre-Settlement

26. On September 5, 2019, the Purchase Agreement's "Due Diligence" period expired and Next Day, LLC lost the opportunity to inspect the property or perform any environmental impact studies and negotiate resolving any defects found.

27. With Mr. Vardi not offering any help, Next Day, LLC proceeded on its own collecting materials for Closing, such as a title report.

28. Next Day, LLC, however, learned on September 14, 2019 from Mr. Vardi that he could not provide by the Closing Deadline the funding that he promised Next Day, LLC he would obtain.

29. Next Day, LLC asked Mr. Vardi to explain his difficulty in obtaining financing and how much extra time he thought he would need so that Next Day, LLC could negotiate with RCK extending the Closing Deadline, but Mr. Vardi did not respond.

30. Two days later, Next Day, LLC asked Mr. Vardi to provide a financing commitment letter in time for the upcoming September 20, 2019 Commitment Period Deadline.

31. On the day of the Commitment Period Deadline, Mr. Vardi told Next Day, LLC that the lender for the Purchase needed additional documentation before it could provide financing, but Mr. Vardi also sent a letter from Index (the "Index Letter"), which Mr. Vardi represented as a financial commitment.

32. The Index Letter is signed by a "David Vardi" and includes a Nationwide Multistate Licensing System & Registry ("NMLS ID") Number.

33. Upon information and belief, the NMLS ID provided is not associated with any active broker or originator in the registry, nor is it associated with Navid Vardi, Index, or Lomas.

34. Upon information and belief, Index is not a Mortgage lender, broker, nor originator as defined by the NMLS and not a licensed mortgage broker in Virginia or Pennsylvania.

35. Believing Mr. Vardi provided a proper commitment letter from a state and federally licensed lender, Next Day, LLC continued Purchase preparations and sent the Index Letter to RCK.

36. Over the next thirty-seven days, Next Day, LLC communicated with Mr. Vardi multiple times to propose alternative closing dates that would afford Mr.

Vardi the additional time he claimed he needed to resolve financing for the Purchase, but Mr. Vardi did not respond with such dates.

37. Finally, on October 17, 2019, with the deadline for closing six days away, Mr. Vardi asked Next Day, LLC for additional documentation he claimed necessary to secure financing from an unidentified lender.

38. In response to Mr. Vardi's request for additional materials, Next Day, LLC asked Mr. Vardi to specify the documents needed, reminded Mr. Vardi about the Closing Deadline, and warned Mr. Vardi that missing this date will result in Next Day, LLC seeking recovery for any resulting losses from Index and, if appropriate, Mr. Vardi, personally.

39. The next day Mr. Vardi again requested additional documentation to complete a financing application, and, although Mr. Vardi was asking for previously provided documents, Next Day, LLC sent Mr. Vardi additional materials over the next few days.

40. On October 21, 2019, two days before the Closing Date, Mr. Vardi asked to extend that deadline until November 30, 2019.

41. To facilitate RCK's agreement to extending closing, Next Day, LLC asked Mr. Vardi to provide a new commitment letter in which Mr. Vardi's company would commit to financing the transaction and closing on the Purchase by no later than the end of November.

42. Mr. Vardi failed to respond to Next Day, LLC's request for a revised commitment letter before, or even after, the Closing Deadline.

43. Further complicating the circumstances, Mr. Vardi did provide an "Conditional Loan Approval" document dated October 23, 2019, purportedly for a thirty-year loan with a fixed 8.74% interest rate, plus associated closing fees, including a broker's fee of "4 points," even though ten months earlier he had provided a similar approval for a loan with a three years fixed 8.74% interest rate, then an adjustable mortgage rate for twenty seven years and $2,500.00 less in other fees than the October approval.

### D. Notice of Default

44. Via a letter dated October 24, 2019, RCK notified Next Day, LLC that it had defaulted on Purchase Agreement (the "RCK Default Letter") and demanded Next Day, LLC either:

    a. complete closing within fifteen days, i.e. November 8, 2019;

    b. agree to a new closing date of December 2, 2019, a new Purchase Price for the Property at $600,000.00, and an additional non-refundable deposit in the amount of $20,000.00; or

    c. terminate the Purchase agreement and compensate RCK for its fees and costs amounting to $12,393.00, as the Purchase Agreement provided.

45. Next Day, LLC forwarded the RCK Default Letter to Mr. Vardi on October 25, 2019.

46.     Next Day, LLC also explained to Mr. Vardi that his material lapses in communication, his failure to request documents timely, and his failure to adhere to the Purchase Agreement's deadlines all left Next Day, LLC with accepting either worse purchase terms for the Property or costs for default, unless he could finalize and achieve closing by November 8, 2019.

47.     By November 5, 2019, however, Mr. Vardi still had not made arrangements for closing and still had not confirmed that he had all necessary paperwork, despite repeated requests from Next Day, LLC.

48.     By November 8, 2019, Mr. Vardi had failed to: obtain a proposed closing date or a Commitment letter from the lender, complete required property inspections for obtaining financing, or otherwise act to prevent default and the resulting harm to Next Day, LLC.

### E. Termination of the Purchase Agreement

49.     On November 11, 2019, despite Next Day, LLC's ongoing attempts to negotiate revisions to the Purchase Agreement, RCK terminated that agreement and demanded Next Day, LLC comply with the Purchase Agreement's termination provisions, including paying RCK "$13,899.00 which represents the legal fees associated with the transaction up to the point of termination…" within fifteen days (the "Termination Terms").

50. As an alternative to terminating the Purchase Agreement, RCK re-offered the terms outlined in its October 24, 2019 letter:

    a. a new closing date of December 2, 2019 (the "Revised Closing Date");

    b. a new Purchase Price for the Property at $600,000.00; and

    c. an additional non-refundable deposit in the amount of $20,000.00.

(the "Alternative Agreement").

51. Faced with either the Purchase Agreement's Termination Terms or RCK's unilaterally proposed Alternative Agreement terms, Next Day, LLC accepted the RCK Alternative Agreement.

52. Next Day, LLC informed Mr. Vardi it accepted the Alternative Agreement, and, in response, Mr. Vardi promised he could secure financing and any other requirements for the December 2, 2019 Revised Closing Date.

53. In addition to promising to meet the Revised Closing Date, Mr. Vardi issued another "Conditional Loan Approval" dated November 13, 2019, which included, yet again, different loan terms: a three year fixed 9.74% interest rate, with an adjustable mortgage rate for twenty seven years, but no "4 points" broker fee and no additional 2,500.00 in other fees included in the October approval.

54. Unable to risk any further delay to finalizing the purchase, Next Day, LLC Member Mervenur Demiroz signed the November 13, 2019 Conditional Loan Approval without further negotiation.

55. On November 22, 2019, Next Day, LLC again asked Mr. Vardi to provide an updated Commitment letter reflecting the Revised Closing Date but with that deadline ten days away Mr. Vardi did not respond.

56. Despite Mr. Vardi's lack of communication, Next Day, LLC continued to prepare all documentation and other requirements for the upcoming closing, including title reports, tax histories, and corporate documentation.

57. One business day before the Revised Closing Date, on November 26, 2019, Next Day, LLC again asked Mr. Vardi for an updated Commitment letter, but Mr. Vardi did not respond.

### F. The Day of Closing

58. On the Revised Closing Date, at 10:09 a.m., Next Day, LLC learned from an outside party that financing for the Purchase would come from Velocity Commercial Capital, LLC ("Velocity"), a company Next Day, LLC did not know, as neither Mr. Vardi, Index, Lomas, nor Velocity explained this change to Next Day, LLC.

59. Because Mr. Vardi introduced a new lender so late in the process and failed to inform it that Closing was scheduled for December 2, 2019, Velocity did not provide Next Day, LLC with a "Clear to Close" authorization until 2:00 p.m., leaving Next Day, LLC only an hour to review all Closing documents' terms and resolve any discrepancies with RCK.

60. In addition to the confusion Mr. Vardi created with the latecomer lender, Mr. Vardi did not attend Closing; therefore, Next Day, LLC did not have its mortgage broker available to negotiate closing terms, explain loan terms, and facilitate the closing process.

61. Mr. Vardi's late lender substation and his absence from closing became more problematic because the loan Velocity provided had higher interest rates, fees, and escrow amounts from the loan Mr. Vardi originally promised to Next Day.

62. In particular, Mr. Vardi imposed a "4 points" broker's fee totaling $15,600.00, despite not including that amount in the Conditional Loan Approval Next Day, LLC executed.

63. Also, for the escrow amount, which the lender determines, the first draft of the HUD-1 document listed the initial escrow portion as $5,704.93 (the "Initial Escrow"), and based on that figure and other amounts, Next Day, LLC expected it needed $228,173.59 to close.

64. During Closing, the new lender, Velocity, repeatedly changed the Initial Escrow so that by 4:39 p.m., the figure had ballooned to $16,255.59, which, combined with daily interest cost ($3,165.50) and the property insurance premium ($5,375.33), increased the amount needed for Closing to $245,833.57.

65.  With no lender representative or Mr. Vardi available to assist with explaining or contesting these changes, Next Day, LLC had no choice but to accept the new fees and charges or walk away from the purchase.

66.  Because Next Day, LLC already had invested significant capital into this transaction and was facing a lease about to expire, it had no choice but to accept Velocity's last minute financing terms and closing costs so it could complete the Purchase and fulfill its obligations under the Purchase Agreement.

67.  To complete the Closing under these new terms, Next Day, LLC had to prepare checks in excess of $10,000.00, coordinate additional payments with RCK, whose principals did not attend closing, and redraft closing documents—all of which cost Next Day, LLC additional and unexpected labor and time.

68.  Due to Mr. Vardi untimely and improperly preparing financing and other arrangements needed for closing, Next Day, LLC and Next Day, Inc. incurred additional costs to complete the Purchase, including, but not limited to:

    a.    $20,000.00 increase in the Purchase Price of the Property because Closing did not occur according to the Agreement;

    b.    $23,283.00 due to an increased loan interest rate;

    c.    $15,600.00 in the "4 Points" broker's fee, which Mr. Vardi imposed unbeknownst to Next Day, LLC;

    d.    $12,274.89 in unnecessary rent payments due to the extended Closing date;

    e.    $8,476.27 in attorneys' fees due to extended Agreement negotiations with opposing counsel preceding and following the Default;

    f.    $6,000.00 in lost productivity of Next Day, LLC due to Defendants' failure to meet deadlines and misrepresentations to Next Day, LLC;

    g.    $1,395.00 due to an additional Appraisal Fee; and

    h.    additional other fees and costs still being determined.

## COUNT I
### Breach of Contract
*Next Day Marble & Granite, Inc., Next Day Marble & Granite, LLC v. Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC*

69. Plaintiffs incorporate by reference paragraphs 1 through 68 of this Complaint as if set forth at length herein.

70. Plaintiffs entered into a contract with Navid Vardi, Index Financial Services, LLC, and/or Lomas Financial Group LLC, on or about October of 2018.

71. In exchange for Defendants' work in procuring adequate funding and completing Closing timely in accordance with the Purchase Agreement, Plaintiffs agreed to pay Defendants for performing this work.

72. By not responding to Next Day, LLCs' repeated requests, delaying in obtaining funding, and causing Next Day, LLC increased closing price and penalties, Mr. Vardi and the other Defendants breached the agreement causing Next Day, LLC to incur costs in excess of $75,000.

**WHEREFORE**, Plaintiffs, Next Day, LLC Marble & Granite, Inc. and Next Day Marble & Granite, LLC demand judgment in their favor and against the Defendants Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC in an amount in excess of $75,000, and such other relief as this Court deems just, proper, and equitable.

### COUNT II
### Fraud in the Inducement
*Next Day Marble & Granite, Inc., Next Day Marble & Granite, LLC v.*
*Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC*

73. Plaintiffs incorporate by reference paragraphs 1 through 72 of this Complaint as if set forth at length herein.

74. On behalf of himself and Index and Lomas, Mr. Vardi represented to Plaintiffs that:

   a. he had the necessary qualifications, skills, and abilities to obtain financing for Plaintiffs to purchase the Property;

   b. he could obtain favorable terms for financing the transaction, including an interest rate at 8.74%

   c. he, Index, and Lomas were licensed to conduct business as mortgage brokers; and

   d. he would obtain Purchase financing and handle all arrangements for Closing.

75. Mr. Vardi knowingly made these representations without a factual basis as neither he nor Index or Lomas had proper qualifications, skills, abilities, or

licensing to serve as a mortgage broker and he did not have financing secured at the promised terms.

76. Plaintiffs reasonably relied on these representations when entering into the contract with Defendants.

77. By knowingly misrepresenting material facts to Plaintiffs, upon which Plaintiffs relied, Mr. Vardi fraudulently induced Plaintiffs to enter into a contract that resulted damages in excess of $75,000.

**WHEREFORE**, Plaintiffs, Next Day, LLC Marble & Granite, Inc. and Next Day Marble & Granite, LLC demand judgment in their favor and against the Defendants Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC in an amount in excess of $75,000, and such other relief as this Court deems just, proper, and equitable.

### COUNT III
**Fraud**
*Next Day Marble & Granite, Inc., Next Day Marble & Granite, LLC v.*
*Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC*

78. Plaintiffs incorporate by reference paragraphs 1 through 77 of this Complaint as if set forth at length herein.

79. On behalf of himself and Index and Lomas, Mr. Vardi represented to Plaintiffs that:

    a. he could obtain financing necessary for Next Day, LLC to purchase the Property;

      b.      he could obtain such financing before the Closing Deadline;

      c.      by way of the Index Letter, he had completed the necessary financing for Next Day, LLC to purchase the Property; and

      d.      he had the necessary qualifications, skills, and abilities to obtain financing for Next Day, LLC to purchase the Property and to complete the Closing.

80. Plaintiffs reasonably relied on Mr. Vardi's representations to execute the Purchase Agreement and proceed with completing Closing.

81. Mr. Vardi's representations, however, proved false, as he failed to: meet Purchase Agreement deadlines; obtain proper documentation to obtain the financing he promised Next Day, LLC; obtain a lender to provide financing for the Purchase, secure financing that complied with the loan terms he originally presented to Next Day, Inc.

82. Further, the Index Letter amounted to nothing more than a fabrication because it falsely stated financing had been secured for closing to occur by October 23, 2019 and falsely represented Mr. Vardi's qualifications.

83. By reasonably relying on Mr. Vardi's misrepresentations that he could timely and properly secure financing, Next Day, LLC continued with the Closing and incurred additional unexpected costs in excess of $75,000 due to Mr. Vardi's misrepresentations.

**WHEREFORE**, Plaintiffs, Next Day Marble & Granite, Inc., and Next Day Marble & Granite, LLC, demand judgment in their favor and against the Defendants, Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC in an amount in excess of $75,000, and such other relief as this Court deems just, proper, and equitable.

## COUNT VI
### Breach of Fiduciary Duty
*Next Day Marble & Granite, Inc., Next Day Marble & Granite, LLC v.*
*Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC*

84. Plaintiffs incorporate by reference paragraphs 1 through 83 of this Complaint as if set forth at length herein.

85. On behalf of himself and Index and Lomas, Mr. Vardi served as an agent to Plaintiffs to obtain financing for the Purchase.

86. As Plaintiffs' agent, Mr. Vardi had a heightened duty to Plaintiffs that required him to act in good faith, to fulfill the duties and responsibilities assigned, and to represent and disclose all material facts need to complete the Purchase.

87. Mr. Vardi failed to secure financing timely or properly, withheld or misrepresented material facts that altered the nature of the transaction, and otherwise failed to uphold his duties and responsibilities owed to Plaintiffs.

88. By failing his obligations to Plaintiffs, Mr. Vardi breached his fiduciary duty to them, which resulted in extending the time it took to complete the Closing and changing the Purchase's material terms.

89. Mr. Vardi's breach of fiduciary duties to Plaintiffs caused Plaintiffs to incur additional Purchase costs and related damages in excess of $75,000.

**WHEREFORE**, Plaintiffs, Next Day Marble & Granite, Inc., and Next Day Marble & Granite, LLC, demand judgment in their favor and against the Defendants, Navid Vardi, Index Financial Services, LLC, and Lomas Financial Group LLC in an amount in excess of $75,000, and such other relief as this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiffs, Next Day Marble & Granite, Inc., and Next Day Marble & Granite, LLC hereby demand a trial by jury on all issues triable by a jury.

Respectfully submitted,

**COHEN, SEGLIAS, PALLAS, GREENHALL & FURMAN, P.C.**

By: _/s/ Michael Metz-Topodas_

**Michael Metz-Topodas**
240 North 3rd Street, 7th Floor
Harrisburg, PA 17101
Office: (215) 564-1700
Email: mmetz-topodas@cohenseglias.com
*Attorney for Plaintiffs, Next Day Marble & Granite, Inc., and Next Day Marble & Granite, LLC*

Dated: April 2, 2020